United States District Court
Southern District of Texas
**ENTERED**
November 09, 2022
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| v. | § | Case No. 2:22-CR-00687 |
| | § | |
| ALLISON OLIVAREZ | § | |
| | § | |

## ORDER DENYING MOTION TO AMEND BOND CONDITIONS

Defendant Allison Olivarez has moved for an amendment of her bond conditions. (Doc. No. 16.) The United States opposes the motion. (Doc. No. 19.) For the reasons discussed below, the Court DENIES the motion.

### A. *Defendant's criminal charge, her bond conditions, and her motion for amendment.*

Defendant seeks permission to marry Roberto Rivas ("Rivas"), the person (formerly a fugitive) whom she is charged with having harbored and concealed from arrest. *See id.* at 1, 3; Doc. No. 10. Defendant's conditions of release currently prohibit her from having any contact with Rivas. *See* Doc. No. 6, p. 2 ¶ 7(g).

In her motion, Defendant observes that the Court, in setting conditions of bond, must select the least restrictive combination of conditions that will reasonably assure the appearance of Defendant as required and the safety of any other person and the community. (Doc. No. 16, p. 2 ¶ 9.) Defendant states that she and Rivas "are not mutual victims nor are they adversarial or antagonistic against nor towards each other. Rather, they love each other and simply wish to be legally married, nothing less, nothing more. *Neither of them seek nor desire to testify against the other* concerning the offenses for which they are charged." *Id.* at 3 (emphasis added).

1 / 9

The available evidence, gleaned from the pretrial services report, indicates that Defendant is in a relationship with Rivas, but that they are not married. Defendant was living with Rivas prior to her arrest. *See* Doc. No. 5, p. 1. She has four children, but none with Rivas. *Id.* Defendant reported to be financially dependent on Rivas. *Id.* at 2.

### B. *The United States' opposition to amending Defendant's bond.*

The United States opposes the proposed change to Defendant's bond condition. In its written response, the United States describes how Rivas was found on Defendant's property, having fled out her back door with bags containing approximately 2.5 kilograms of methamphetamine, 4.5 kilograms of cocaine, 133 grams of heroin, some marijuana, and approximately $94,000 in cash. (Doc. No. 19, p. 2.) The United States has also presented pictorial evidence showing an elaborate hidden closet that was constructed in Defendant's home – construction that began in late August 2022, after Defendant had been made aware of the warrant for Rivas' arrest. *Id.* A search of Rivas' cell phone, pursuant to a search warrant, unearthed a picture and a text message to Rivas from what is believed to be Defendant's cell phone. The picture shows the location from which law enforcement had been conducting surveillance on Defendant's house, and the text message states: "They left." *Id.* The United States further argues that Rivas is a potential witness against Defendant, as he is the person she is accused of harboring. *Id.*

The United States also expresses concern about the timing and motivation of Defendant's request to marry Rivas, and is suspicious that Defendant and Rivas "may be attempting to invoke marital privilege to avoid testifying against one another." (Doc. No. 19, p. 2.) Because there is currently no valid marriage that would allow for the invocation of spousal privilege, the United States maintains, "if the Court were to grant [Defendant's] motion and permit [Defendant] and

Rivas to marry, the Court would essentially be allowing them to create a privilege to prevent them from being compelled to testify against one another." *Id.* The United States contends that there is "no undue burden by postponing any pending nuptials until after these criminal proceedings have concluded. Once they are no longer potential witnesses and/or co-conspirators in each other's criminal proceedings, the government has no issue if they choose to marry." *Id.* at 4. Until that time, the United States requests, the Court should maintain the no-contact order "in the interest of justice." *Id.*

### C. Governing law.

Section 3142 of Title 18, United States Code, provides that the judicial officer may condition a defendant's release prior to trial on the defendant's satisfaction of one or more conditions, so long as those conditions are the least restrictive necessary to reasonably assure the appearance of the defendant as required and the safety of any other person and the community. *See* 18 U.S.C. §§ 3142(c)(1), 3142(c)(1)(B). A court's selection of those conditions is an individualized process, and is necessarily a matter of discretion. *See generally* 18 U.S.C. § 3142(c)(1)(B)(xiv) (authorizing the imposition of "any other condition that is reasonably necessary to assure the appearance of the person as required and to assure the safety of any other person and the community"). One permissible condition specified in the statute could require that a defendant "avoid all contact with … a potential witness who may testify concerning the offense." 18 U.S.C. § 3142(c)(1)(B)(v).

### D. Analysis: the bond condition is reasonably necessary and appropriately tailored to assure both Defendant's appearance as required and the safety of others and the community.

The Court remains comfortable that the Defendant's no-contact bond condition is both necessary and appropriately tailored. As the United States explains in its response, Rivas is a

potential witness who may testify concerning Defendant's alleged harboring offense. (Doc. No. 19, p. 3.) Rivas is the person whom Defendant is charged with harboring. *See* Doc. No. 10 (Indictment). The evidence submitted by the United States indicates that Defendant was either actively participating in the construction of an elaborate hidden closet in her home, or at least was permitting that construction. Rivas' cell phone received pictures of this closet while it was being built – after Defendant had been made aware that Rivas was a wanted fugitive. *See* Doc. Nos. 19-1 through 19-5.

Defendant counters that § 3142(c)(1)(B)(v) is aimed at preventing witness intimidation, not the sort of amicable contact she proposes here. Defendant cites the legislative history underpinning § 3142(c)(1)(B)(v) to suggest that the provision should be imposed "whenever the circumstances are such that the judge believes any form of victim or witness intimidation may occur." *See* Doc. No. 16, p. 3 ¶ 14 (citing S. Rep. No. 225, 98th Cong., 1st Sess., 3, 14-15 (1983); Weinberg, *Federal Bail and Detention Handbook 2017*, at 34 (2017)). While the Court acknowledges that witness intimidation can be one reason for a court to impose a no-contact provision as a condition of bond, the text of § 3142(c)(1)(B)(v) does not confine the condition's imposition to such situations, and the Court declines to infer a limitation on the use of that provision, especially in light of the fact that all of the bond conditions in § 3142(c)(1)(B) are discretionary and are listed by way of example. Section 3142(c)(1)(B)(v) permits use of that condition in any circumstance the judicial officer deems appropriate, so long as the conditions imposed are the least restrictive necessary to achieve the purposes of § 3142: ensuring the defendant's appearance as required and the safety of others and the community. *See* 18 U.S.C. §§ 3142(b), 3142(c).

Here, the Court finds that the no-contact condition in Defendant's bond is necessary and is the least restrictive means to reasonably assure both Defendant's appearance as required and the safety of others and the community. Rivas is no ordinary witness: he is the object of Defendant's alleged harboring offense, and is currently under indictment himself for a significant drug-trafficking offense.[1] The no-contact order is necessary to prevent Defendant from colluding with perhaps the prosecution's most important witness in this harboring case: Rivas himself. The construction of the hidden space in Defendant's home, undertaken only after Defendant was made aware of the warrant for Rivas' arrest, evidences Defendant's willingness to collude with Rivas even if it means committing a felony and engaging in deceitful conduct in order to do so. The Court finds that Defendant's no-contact bond condition is fully warranted for this reason alone. *Cf. United States v. Pickel*, 500 F. App'x 771, 772-73 (10th Cir. 2012) (finding no abuse of discretion in bond condition requiring no contact between defendant and his purported common-law wife based in part on potential for collusion with witnesses).

Finally, Defendant has offered no evidence that the no-contact order causes any undue hardship (or any hardship at all) during the pretrial stage of her criminal case. From the evidence available, Defendant does not share any children with Rivas. There is also no evidence that Defendant and Rivas were previously engaged, or that they had formed any intent to marry prior to the bringing of these criminal charges. And while Defendant may have been financially dependent on Rivas prior to these criminal charges, Rivas is now himself detained pending his own trial on drug trafficking charges; Defendant articulates no financial reason that would require her to have contact with Rivas. Finally, the duration of the no-contact order is limited –

---

[1] Rivas is charged in case number 2:22-cr-00493, currently pending in this Division.

just a few months during the pendency of Defendant's criminal proceeding. In fact, Defendant's final pretrial conference is scheduled to occur less than a week from now.[2] By contrast, this is not a situation involving post-conviction conditions of supervised release, which could potentially persist for several years or more. *Compare, e.g., United States v. Martinez*, No. 4:21-cr-00107-SMR-HCA-1,2, 2021 WL 4169789, at *2 (S.D. Iowa Sept. 13, 2021) (discussing parameters of no-contact order between married co-defendants with reference to relatively short duration of restriction) *with United States v. Hobbs*, 845 F.3d 365, 368 (8th Cir. 2016) (disapproving supervised release provision that included a no-contact order between spouses that would have spanned more than three years).

Mindful of its obligation to impose conditions that are no more restrictive than necessary to achieve § 3142's purposes, the Court has considered, in light of Defendant's motion, whether more narrowly tailored alternatives might exist. One possibility might be to permit Defendant to have contact with Rivas only with the permission of her supervising probation officer. *Cf. United States v. Rodriguez*, 178 F. App'x 152, 159 (3d Cir. 2006) (upholding special condition of supervised release to that effect). Another possibility might be to allow only supervised contact, perhaps by a probation officer. The Court finds, however, that such conditions would not sufficiently ensure that Defendant and Rivas would not collude to commit further deceitful, or perhaps even obstructive or criminal, conduct, endangering the safety of others or the community

---

[2] The United States appears to seek the application of Defendant's bond condition not only until Defendant's own harboring case is concluded, but until the end of Rivas' drug trafficking prosecution. *See* Doc. No. 19, p. 4. Presumably, this could include potential testimony by Defendant at Rivas' trial, or even at his sentencing, should he be convicted. Conceivably, such testimony could occur months after Defendant's own criminal case is concluded. The Court reserves this question for a later time. For now, as discussed in the main text, it is sufficient to determine that Defendant's bond conditions, as they currently exist, are necessary and appropriate. Should Defendant wish to raise the matter at a later time, because of further developments in her own case, she is free to do so.

and threatening the integrity of the judicial process.  The Court concludes that the no-contact order as currently imposed is the least restrictive means to achieve the purposes of § 3142.

### E.  The impact of the bond condition on a fundamental right does not change the Court's analysis.

The Court's decision denying Defendant's motion rests on its conclusion in the preceding section that the no-contact provision is necessary to ensure Defendant's appearance as required and to ensure the safety of others and the community.  Additionally, however, the Court finds that any effect of the provision on a constitutional right of Defendant's is justified and permissible under the circumstances presented in this individual case.

Defendant argues that the United States "has no reasonable or legitimate basis or reason to oppose the desired marriage to take place." (Doc. No. 16, p. 3 ¶ 15.)  The United States responds that it "has no standing to prevent two people from marrying," but asserts that the no-contact condition in Defendant's bond is nonetheless appropriate.  *See* Doc. No. 19, p. 3.

As the United States notes, permitting Defendant to have contact with Rivas would allow Defendant to marry Rivas (as she states she wishes to do), thereby enabling Rivas' potential invocation of a spousal testimonial privilege.  *See Trammel v. United States*, 445 U.S. 40, 52-53 (1980).  This is hardly a far-fetched concern: Defendant herself states plainly that neither she nor Rivas "desire to testify against the other regarding the crimes for which they are charged." (Doc. No. 16, p. 3 ¶ 13.)  The United States therefore opposes Defendant's marriage to Rivas – at least while these charges are pending – in order to preserve the availability of Rivas' testimony at Defendant's trial.  If Defendant married Rivas, the adverse spousal testimonial privilege would allow Rivas to refuse to testify against Defendant at her upcoming trial, thus potentially undermining the United States' case.  The United States' desire to avoid this outcome is a

legitimate, reasonable, and non-punitive reason to delay Defendant's marriage to Rivas until after her trial is concluded. *Cf. United States v. Beltran-Ochoa*, No. 1:21-cr-00019-RGE-SHL, 2021 WL 4056816, at *2 (S.D. Iowa June 24, 2021) (refusing permission for pretrial detainee to marry material witness).

That marriage is a fundamental right does not change the analysis. "Persons with criminal charges pending are routinely subject to significant restrictions on their constitutional rights once probable cause has been shown." *United States v. Perez-Garcia*, No. 3:22-CR-01581-GPC, 2022 WL 4351967, at *6 (S.D. Cal. Sept. 18, 2022) (imposing bond condition prohibiting possession of firearms); *United States v. Thomas*, 540 F. Supp. 3d 363, 370 (W.D.N.Y. 2021) ("[T]he reality is that once an individual has been charged with a crime, certain rights must give way to reasonable restrictions in order to protect the safety of others and the community, prevent any risk of flight, and ensure compliance with pretrial release conditions."). Even the deprivation of liberty – detention prior to trial – can be permissible if the judicial officer determines its necessity in an individualized manner. So too with marriage: although there is a constitutional right to marry, the Court finds that the United States' interest in having Rivas available as a witness at Defendant's trial outweighs the possible imposition to Defendant and Rivas that may result from a delay in marriage. *Cf. United States v. Heard*, No. 17-cr-0083-LRR, 2018 WL 9439686, at *2 (N.D. Iowa Feb. 20, 2018) (citing *Vance v. Rice*, 524 F. Supp. 1297, 1301 (S.D. Iowa 1981)) (both cases denying permission to allow pretrial detainee to marry). Put another way, the cost to society by permitting Defendant to marry a potential prosecution witness and thereby foreclose the use of his testimony, weakening the case against her so that even if guilty she may be able to escape punishment and thwart justice, outweighs Defendant's constitutional right to marry, at least until the charges against her are resolved. *Cf.*

8 / 9

*United States v. Bowen*, No. 14-00346-01-CR-W-DGK, 2015 WL 1893416, at *10 (W.D. Mo. Apr. 27, 2015) (also denying permission to allow pretrial detainee to marry).

### F.  Conclusion.

For these reasons, the Court DENIES Defendant's motion for amendment of her bond conditions (Doc. No. 16).

ORDERED on November 9, 2022.

_____
MITCHEL NEUROCK
United States Magistrate Judge